UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD VARNER,                                    Case No. 13-15070

             Plaintiff,                  Robert H. Cleland
v.                                                United States District Judge

WILLIE SMITH, et al.,                             Michael Hluchaniuk
                                                  United States Magistrate Judge

             Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTIONS FOR SUMMARY JUDGMENT (Dkt. 27, 35)

## I.   PROCEDURAL HISTORY

Plaintiff filed this prisoner civil rights action on December 13, 2013.  (Dkt.

1).  After dismissing some defendants, District Judge Robert H. Cleland referred

this matter to the undersigned for all pretrial proceedings.  (Dkt. 5, 13).  Defendant

Willie Smith filed a motion for summary judgment on April 25, 2014.  (Dkt. 27).

Plaintiff filed a response on June 18, 2014.  (Dkt. 30).  On July 25, 2014,

defendants Carrell, Corizon Health Care, Holmes, and Squier filed their motion for

summary judgment.  (Dkt. 35).  Plaintiff filed his response to this motion for

summary judgment on October 6, 2014.  (Dkt. 42).  Defendants filed a reply on

October 23, 2014.  (Dkt. 43).  This matter is now ready for report and

recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs by failing to perform necessary tests to detect his prostate cancer, failing to provide post-diagnosis treatment, and failing to treat a serious skin condition.  Defendants maintain that plaintiff's prostate condition has been evaluated and treated appropriately within the prevailing standard of care based on plaintiff's test results and physical examinations.  Defendants also argue that plaintiff's skin condition does not rise to the level of a serious medical need subject to protection under the Eighth Amendment, but nevertheless has also been treated within the prevailing standard of care based on the signs and symptoms presented.

According to defendants, prior to arriving at Carson City Correctional Facility (DRF) in February 2012, plaintiff's prostate condition had been regularly monitored and evaluated.  (Dkt. 35, Ex. A, Declaration of Dr. Harriet Squier, M.D., ¶ 6; Ex. B, Declaration of Dr. Scott Holmes, M.D., ¶ 5; Ex. C, Declaration of Dr. Daniel Carrel, ¶ 5; Ex. D, pp. 2-40).  In 2010 and 2011, plaintiff's PSA levels were monitored, he received rectal examinations, and was prescribed

medication to alleviate urinary issues related to his enlarged prostate.  (Dkt. 35, Ex. A, ¶¶ 7-14; Ex. B, ¶¶ 6-13; Ex. C, ¶¶ 6-13; Ex. D, pp. 2-40).  While plaintiff's PSA level (one of several measures used in diagnosing whether a patient has prostate cancer) was slightly elevated during this time period, it was not above the level at which a biopsy was recommended.  (Dkt. 35, Ex. A, ¶¶ 7-8, 11, 14; Ex. B, ¶¶ 6-7, 10, 13; Ex. C, ¶¶ 6-7, 10, 13; Ex. D, pp. 3-14, 39-40).  Plaintiff's rectal exams did not indicate the presence of any tumors.  (Dkt. 35, Ex. A, ¶ 12; Ex. B, ¶ 11; Ex. C, ¶ 11; Ex. D, pp. 15-21).  Accordingly, in July 2011, Dr. Squier determined that a prostate biopsy for plaintiff was not medically indicated.  *Id*.

On his arrival at DRF, plaintiff remained on medication for his enlarged prostate and continued to be monitored.  (Dkt. 35, Ex. A, ¶¶ 14-20; Ex. B, ¶¶ 13-19; Ex. C, ¶¶ 13-19; Ex. D, pp. 41-72).  Between February 2012 and February 2013, plaintiff received Cardura and Hytrin (medications to treat his enlarged prostate), PSA tests, and rectal examinations.  *Id*.  While plaintiff's PSA level slightly increased during this period of time, it did not rise above 4.0 ng/ml, a commonly recognized threshold at which biopsy is recommended.  (*See id*.; Dkt. 35, Ex. E, Fact Sheet, Prostate-Specific Antigen (PSA) Test).  Nor did his rectal examinations indicate the presence of any tumors.  *Id*.

On February 11, 2013, plaintiff received a PSA test, indicating a PSA level of 4.17 ng/ml.  (Dkt. 35, Ex. A, ¶ 20; Ex. B, ¶ 19; Ex. C, ¶19; Ex. D, pp. 70-72).

3

Due to this PSA elevation, plaintiff's chart was reviewed by Dr. Holmes and plaintiff was seen by Nurse Practitioner Merren on March 1, 2013. (Dkt. 35, Ex. A, ¶ 21; Ex. B, ¶ 20; Ex. C, ¶ 20; Ex. D, pp. 73-78). On that date, Nurse Practitioner Merren performed a rectal examination on plaintiff and noted normal findings with no evidence of tumors. *Id*. However, the size of plaintiff's prostate had increased and was irregularly shaped and nodular. *Id*. Therefore, Nurse Practitioner Merren continued plaintiff on Hytrin and sent a request for a urology consultation and prostate biopsy. (*Id*.; Ex. D, pp. 75-84). Dr. Squier reviewed and approved the urology consultation for plaintiff on the same date and the consultation was scheduled for March 13, 2013, at the Lansing Institute of Urology. (Ex. 35, Ex. A, ¶ 22; Ex. B, ¶ 21; Ex. C, ¶ 21; Ex. D, pp. 85-89).

On March 13, 2013, plaintiff was seen by Dr. Rafid H. Yousif, M.D. at the Lansing Institute of Urology. (Ex. 35, Ex. A, ¶ 23; Ex. B, ¶ 22; Ex. C, ¶ 22; Ex. D, pp. 90-91). On that date, Dr. Yousif recommended that plaintiff undergo a cytoscopy, which is an endoscopy of the urethra and bladder, as well as a prostate ultrasound with needle biopsy. *Id*. Dr. Yousif also recommended plaintiff discontinue Hytrin and receive Flomax for his urinary symptoms. *Id*. Plaintiff was provided a prescription for Flomax as recommended and received a prostate ultrasound and biopsy on July 10, 2013. (Dkt. 35, Ex. A, ¶¶ 24-28; Ex. B, ¶¶ 23-27; Ex. C, ¶¶ 23-27; Ex. D, pp. 93-121). Plaintiff's ultrasound revealed that

4

his prostate was slightly enlarged at 25 grams and measuring 4.2 x 3.6 x 3.2 cm.
Also, no nodules or tumors were detected. (Dkt. 35, Ex. A, ¶ 28; Ex. B, ¶ 27; Ex.
C, ¶ 27; Ex. D, pp. 117-21). However, plaintiff's biopsy did indicate prostate
adenocarcinoma at Gleason grade 6. *Id*.

According to defendants, an adenocarcinoma Gleason grade 6 is a low-risk
prostate cancer, not likely to grow or get worse. (Dkt. 35, Ex. A, ¶ 29; Ex. B, ¶ 28;
Ex. C, ¶ 28; Exhibit F, Treatment Choices for Men With Early-Stage Prostate
Cancer). Therefore, defendants maintain that, in accordance with national
guidelines and the prevailing standard of care for this level of prostate cancer, Dr.
Squier determined there was there is no medical necessity for removal of
plaintiff's prostate. (Dkt. 35, Ex. A, ¶ 31; Ex. B, ¶ 30; Ex. C, ¶ 30; Ex. D, pp.
129-30; Ex. F). Rather, defendants assert that, at that stage of the cancer, active
surveillance is the within the prevailing standard of care. *Id*. Therefore, Dr.
Squier recommended a treatment plan of continued PSA tests every six months
and another biopsy in 18 months to rule out disease progression. Dr. Carrel agreed
with this treatment plan. (*Id*.; Ex. D, pp. 129-31). Plaintiff was notified of this
treatment plan. (Dkt. 35, Ex. A, ¶¶ 32-33; Ex. B, ¶¶ 31-32; Ex. C, ¶¶ 31-32; Ex.
D, pp. 132-33, 135-37).

On September 9, 2013, plaintiff complained of pain and that the prescribed
Flomax was making him sick. (Dkt. 35, Ex. A, ¶ 33; Ex. B, ¶ 32; Ex. C, ¶ 32; Ex.

D, pp. 132-33). Therefore, when plaintiff's prescription for this medication expired in October, it was not renewed. (Dkt. 35, Ex. A, ¶ 34; Ex. B, ¶ 33; Ex. C, ¶ 33; Ex. D, pp. 135, 138-39). However, since that time, defendants contend that plaintiff has not presented to the medical staff for examination regarding any urinary difficulties. (Dkt. 35, Ex. A, ¶ 36; Ex. B, ¶ 35; Ex. C, ¶ 35; Ex. D, pp. 144-47). Defendants assert that plaintiff's prostate cancer continues to be monitored to evaluate whether further measures are necessary for treatment. (Dkt. 35, Ex. A, ¶ 37; Ex. B, ¶ 36; Ex. C, ¶ 36). They also maintain that, at no time have defendants or any of the medical staff at Carson City Correctional Facility been deliberately indifferent to plaintiff's prostate condition. *Id*. Rather, plaintiff's condition has been continuously monitored and treated pursuant to national guidelines and the prevailing standard of care based on plaintiff's test results and symptoms. *Id*. Defendants also point out that plaintiff has been provided medication for his urination issues, including Hytrin, Cardura, and Flomax, to the extent he indicated they were effective and did not cause him to be sick. *Id*. While plaintiff requests removal of his prostate, or prostatectomy, defendants contend that a prostate cancer at Gleason grade 6 does not require such a procedure. (Dkt. 35, Ex. A, ¶ 38; Ex. B, ¶ 37; Ex. C, ¶ 37; Ex. F). Rather, they say it is fully within the prevailing standard of care to regularly monitor the patient's cancer as it is not likely to grow or get worse. *Id*. In addition to being

medically unnecessary, a prostatectomy has numerous risks including death, blood clots and infection, as well as side effects including impotence and incontinence. *Id*. Accordingly, the determination to not provide plaintiff with a prostatectomy at this time is an informed medical decision based on an evaluation of the necessity of the procedure and the potential negative risks and side effects. *Id*.

After his arrival at Carson City Correctional Facility, defendants say that plaintiff's first complaints regarding a skin issue arose on March 15, 2012, when he complained that he had bumps or a rash on his nose. (Dkt. 35, Ex. A, ¶ 39; Ex. B, ¶ 38; Ex. C, ¶ 38; Ex. D, pp. 148-50). The nurse examining plaintiff noted that he presented with a slightly raised, dry rash and plaintiff was scheduled for a follow-up visit with the nurse practitioner. *Id*. On March 21, 2012, plaintiff was seen by the nurse practitioner who only observed darker pigment over the bridge of his nose and no drainage. (Dkt. 35, Ex. A, ¶ 40; Ex. B, ¶ 39; Ex. C, ¶ 39; Ex. D, pp. 151-53). Plaintiff described the rash as itchy and was prescribed Metro gel, an antibiotic gel typically used to treat adult acne. *Id*. Over the next six months, defendants point out that plaintiff was examined numerous times for his complaints regarding a rash. (Dkt. 35, Ex. A, ¶¶ 41-48; Ex. B, ¶¶ 40-47; Ex. C, ¶¶ 40-47; Ex. D, pp. 154-77). However, on examination there was little to no evidence of a rash, nor was there any indication of a serious skin condition such as infection, pustules or drainage. *Id*. Nevertheless, plaintiff was provided various

7

ointments, including hydrocortisone cream and Betamethasone, a steroidal anti-inflammatory cream, to treat his complaints. *Id*.

On November 8, 2012, Nurse Practitioner Merren noted plaintiff's first visible lesion on his face. (Dkt. 35, Ex. A, ¶ 49; Ex. B, ¶ 48; Ex. C, ¶ 48; Ex. D, pp. 178-82). She identified plaintiff's lesion as a comedo, a whitehead or blackhead associated with acne. Nurse Practitioner Merren also noted smaller comedones, or acne bumps, around plaintiff's nose and upper lip. *Id*. To treat, Nurse Practitioner Merren prescribed an antibiotic, Doxycycline. *Id*. By December 3, 2012, plaintiff's lesion had resolved, the rest of his acne was clearing up, and he denied any further symptoms while on the Doxycline. (Dkt. 35, Ex. A, ¶ 50; Ex. B, ¶ 50; Ex. C, ¶ 50; Ex. D, pp. 183-91). Though the nurse practitioner prescribed an additional three weeks of Doxycyline, it was unavailable as the manufacturer had discontinued this medication. *Id*. Nevertheless, though plaintiff intermittently complained of several instances of a rash in January, February and June 2013, defendants maintain that he did not present with any further lesions or signs of a significant skin condition. (Dkt. 35, Ex. A, ¶¶ 51-55; Ex. B, ¶¶ 50-54; Ex. C, ¶¶ 50-54; Ex. D, pp. 192-203). And, according to defendants, plaintiff did not seek medical attention for any skin condition between June 14, 2013 and the date his medical records were certified for this litigation on May 29, 2014. (Dkt. 35, Ex. A, ¶ 56; Ex. B, ¶¶ 50-55; Ex. C, ¶¶ 50-55).

8

Based on his medical record, defendants assert that, at no time relevant to this suit, was any medical professional deliberately indifferent to plaintiff's skin condition. (Dkt. 35, Ex. A, ¶ 57; Ex. B, ¶ 56; Ex. C, ¶ 56). According to defendants, plaintiff presented minimal or no signs of a rash or other skin disorder on almost every occasion he was seen by medical staff. *Id*. Nevertheless, plaintiff was provided several topical creams and ointments to treat his alleged symptoms. *Id*. Further, when plaintiff did demonstrate acne symptoms, he was provided an antibiotic and his condition resolved. *Id*. Defendants also contend that, other than plaintiff's complaints of itching, there is no indication from the medical record that his acne or other purported skin condition was significantly painful or otherwise created a risk to his health or well-being. (Dkt. 35, Ex. A, ¶ 58; Ex. B, ¶ 57; Ex. C, ¶ 57). And, according to defendants, plaintiff's medical record demonstrates he did not seek further medical treatment for his alleged skin condition for nearly a year preceding the certification of his medical records on May 29, 2014. *Id*. Therefore, there is no indication that the care provided by the medical staff at Carson City Correctional Facility exacerbated his purported condition or otherwise caused injury to plaintiff. *Id*.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions,

9

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

B.    Claims Against Medical Providers

Plaintiff alleges an Eighth Amendment claim for deliberate indifference to his medical needs.  (Dkt. 1).  In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted).  Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment.  *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v.*

11

*McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'"  *Farmer*, 511 U.S. at 834.  Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that

12

he then disregarded the risk." *Id.* at 837. In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-40). "Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

Regarding plaintiff's claim against the defendants who provided medical care, in cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical staff, the plaintiff fails to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches

13

to his medical treatment where defendant discontinued plaintiff's previous course of treatment and prescribed what plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. 2010) (plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), *adopted by* 2010 WL 1657690 (E.D. Mich. 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. 2009) (plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested).

In response to the motion for summary judgment, plaintiff claims that defendants failed to perform the necessary tests earlier, which would have detected his prostate cancer earlier and thus, the pain he has been experiencing during the last four years could have been avoided.  He claims that defendants wrongfully denied him a follow-up consultation with the urologist who performed the biopsy. According to plaintiff, the records show that he was not given regular care; rather he was given care only when requested and that he has been limited to three call-outs per year.  In order to prove that he was neglected all these years, plaintiff said

he recently had an appointment with Dr. Holmes, who told him that his cancer should never have been allowed to get to this stage without treatment. And, that defendants cannot now justify the neglect or rectify the damages by now authorizing the surgery, when plaintiff has suffered physical damage the past four to six years. Plaintiff also claims that the denial of a dermatology referral led PA Merren to make an improper diagnosis regarding his skin condition. Plaintiff says it is untrue that he has not raised the skin disorder issue since last year because he decided it was just better to file a complaint after his request to see a dermatologist was denied.

Defendants contend that plaintiff's claims in this action are precisely of the kind that this Circuit has determined to be insufficient to state a constitutional violation because plaintiff simply disagrees with the evaluation and treatment that Dr. Squier, Dr. Holmes, and Dr. Carrel provided for his prostate and skin conditions. Defendants maintain that it is clear from the medical records and testimony submitted that plaintiff received medical attention for these conditions, including numerous tests, evaluations, procedures and medications for these conditions. Thus, defendants assert that plaintiff's mere disagreement with these courses of treatment is insufficient to create a genuine issue of material fact as to constitutionality of his care. Defendants also point out that plaintiff fails to produce any medical records, competent testimony or other evidence

15

demonstrating that the care, evaluations, diagnoses and courses of treatment pursued by Drs. Squier, Holmes and Carrel were inconsistent with the prevailing standard of care for these conditions. *Beard v. Banks*, 548 U.S. 521, 530 (2006); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Finally, plaintiff argues that Corizon Health Care has a protocol that is severely flawed in an effort to save money for financial gain at the expense of prisoner health. According to plaintiff, financial considerations are always the most important factors not to perform certain medical procedures, which puts the health and welfare of the inmate at risk. According to defendants, even if the conduct of Drs. Squier, Holmes and Carrel rose to the level of deliberate indifference in violation of plaintiff's Eighth Amendment rights (which they maintain it did not), Corizon cannot be held liable upon a theory of respondeat superior simply because it employed those doctors. *Johnson v. Carnes*, 398 F.3d 868, 877 (6th Cir. 2004); *Street v. Corrs. Corp. of America*, 102 F.3d 810, 817-18 (6th Cir. 1996). Rather, in order for Corizon to be liable, plaintiff must establish that he suffered an injury from a custom or policy and that the custom or policy at issue is actually that of Corizon. *Id*.; *see also Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). According to defendants, while plaintiff vaguely alleges that Corizon has flawed protocol and policies, he provides no specific elaboration on how the policies or protocols are flawed nor does he provide any evidence

16

supporting such a contention.  At this stage of the litigation, in the face of a
properly supported motion for summary judgment, defendants contend that
plaintiff has failed to create a genuine issue of material fact demonstrating
Corizon's liability.  *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th
Cir. 1996) ("the plaintiff must present more than a scintilla of evidence in support
of his position; the evidence must be such that a jury could reasonably find for the
plaintiff"), citing *Anderson*, 477 U.S. at 252.

A serious medical need generally falls into one of two categories: (1) a
medical need diagnosed by a physician as requiring treatment; or (2) a medical
need that is so obvious that a lay person would easily recognize the necessity for a
doctor's attention.  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326,
347 (3d Cir. 1988).  As to the latter category, "an inmate who complains that delay
in medical treatment rose to a constitutional violation must place verifying
medical evidence in the record to establish the detrimental effect of the delay in
medical treatment to succeed." *Dodson v. Wilkinson*, 304 Fed. Appx. 434, 439 (6th
Cir. 2008), quoting *Napier*, 238 F.3d at 742.  As the Sixth Circuit explained in
*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004):

> *Napier* applies where the plaintiff's "deliberate
> indifference" claim is based on the prison's failure to
> treat a condition adequately, or where the prisoner's
> affliction is seemingly minor or non-obvious. In such
> circumstances, medical proof is necessary to assess

17

whether the delay caused a serious medical injury.

In this case, defendants offer evidence in the form of their declarations that the monitoring of plaintiff's prostate cancer was done in accordance with national standards, based on his test results, including the biopsy, and that, in their opinion, his cancer was treated and monitored appropriately during the time frame in question. Plaintiff offers no evidence to the contrary. Plaintiff's contention that Dr. Holmes has now stated that plaintiff's condition requires surgery simply does not establish that plaintiff required surgery during the time frame at issue in this case or that any delay caused him harm or his condition to worsen. A non-movant must show sufficient evidence to create a genuine issue of material fact which must be more than a "scintilla" of evidence and must allow a jury to reasonably find for the non-moving party. *Napier*, at 742. Once a moving party has carried its burden under Rule 56, which defendants have done here, the opponent must do more than simply show that there is "some metaphysical doubt as to material facts." *Travelers Prop. Cas. Co. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 270 (6th Cir. 2010), quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Yowell v. Booker*, 2014 WL 1096398, *10 (E.D. Mich. 2014) ("Here, plaintiff makes no allegations that could plausibly establish that he suffered any detrimental effect from the delay [in treating his prostate cancer]."). Plaintiff has not done so here and, therefore, has not established a genuine issue of material fact on the objective

18

prong of the deliberate indifference test.

Even if plaintiff can satisfy the objective prong of the deliberate indifference test, the second element of *Wilson* requires a showing that defendants acted with deliberate indifference, which plaintiff has not done. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105-06 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference."). As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v.*

19

*Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2. A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (6th Cir. 1994), quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-61 (6th Cir. 1976). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). The deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298) to deny or to delay purposely "access to medical care" or intentionally to interfere "with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn ex rel. Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

    In the view of the undersigned, these facts merely present a difference of medical opinion, which does not generally fall within the scope of an Eighth

Amendment claim.  *See Thomas v. Coble*, 55 Fed. Appx. 748, 749 (6th Cir. 2003)

("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat

at [Plaintiff's] pain.  However, this difference of opinion does not support an

Eighth Amendment claim."); *see also Cuco v. Fed. Med. Center-Lexington*, 2006

WL 1635668, *33 (E.D. Ky. 2006) (The fact that the plaintiff's personal physician

believed that the treatment chosen by prison medical personnel was not an

effective treatment regimen does not matter.  That is, even where a plaintiff's

private physician recommends a course of treatment for the plaintiff's condition, a

prison doctor's use of a different treatment regimen does not amount to deliberate

indifference.).  In the view of the undersigned, defendants exercised their

professional medical judgment in determining how and when to treat plaintiff and

thus, were not deliberately indifferent to plaintiff's prostate cancer and other

prostate-related symptoms.

As to plaintiff's claim that defendants were deliberately indifferent to his

skin condition, the undersigned concludes that there is no genuine issue of

material fact on this claim either.  Again, even if this were considered a serious

medical need (which seems doubtful, at best), plaintiff merely disagrees with the

course of treatment provided.  This is insufficient to establish a deliberate

indifference claim.

Finally, as to plaintiff's claims against Corizon, the undersigned concludes

that they also fail.  It is well-established that "[a] defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis."  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996), citing *Monnell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  A plaintiff who sues a private or public corporation for constitutional violations under 42 U.S.C. § 1983 must establish that a policy or custom caused the alleged injury.  *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818.  The Sixth Circuit has held that like a municipal corporation, "[Corizon's] liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights."  *Starcher v. Corr. Med. Sys., Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. 2001).  Thus, in order to state a § 1983 claim against defendant Corizon, plaintiff "must allege the existence of a policy, practice or custom that resulted in the injury."  *Moreno v. Metropolitan Gen. Hosp.*, 2000 WL 353537, at *2 (6th Cir. 2000).  Specifically, plaintiff must identify the policy, connect the policy to the defendant, and show that the execution of that policy caused the particular constitutional injury alleged.  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993); *see also Savoie v. Martin*, 673 F.3d 488, 493-94 (6th Cir. 2012) (plaintiff is required to plead and prove his constitutional rights were violated as a result of a policy or custom of the employer, which was the moving force behind the deprivation of rights).  "It is not enough for a complaint under

22

§ 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law.  Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

Liability may be premised on the existence of an express policy adopted by the appropriate authorities, or on the existence of a custom.  *See Hamer v. Cnty. of Kent*, 2013 WL 8479414, at *2 (W.D. Mich. Nov. 6, 2013), *adopted by* 2014 WL 1276563 (W.D. Mich. Mar. 27, 2014).  Or, liability may be premised on a failure to institute a policy or the failure to train its employees.  *Id.*  However, liability exists under this theory only where the need to act "is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights, that the policy makers can reasonably be said to have been deliberately indifferent to the need.  *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)).  To state a claim under a theory of "inaction," plaintiff must establish (1) the existence of a clear and persistent pattern of constitutional violation by employees, (2) notice or constructive notice on the part of the employer, (3) the employer's tacit approval of the unconstitutional conduct, and (4) that the failure to act was the "moving force" or direct causal link in the constitutional deprivation.  *City of Canton*, 489 U.S. at 388-89; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005).

23

First, as discussed above, plaintiff has failed to establish that his constitutional rights were violated.  The record shows that plaintiff received treatment while in custody and plaintiff acknowledges the same.  Where plaintiff cannot prove that there was an Eighth Amendment violation by medical treaters, there is no basis of claiming that the treater's employer, here Corizon, had an unconstitutional policy.  *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."), citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Meier v. Cnty. of Presque Isle*, 2009 WL 1285849, at *3 (E.D. Mich. 2009) (collecting cases holding that there is no municipal liability if the conduct of the individual defendants does not violate plaintiff's constitutional rights), *aff'd*, 376 Fed. Appx. 524 (6th Cir. 2010).  Thus, because plaintiff's first amended complaint fails to allege constitutional violations by defendants, Corizon cannot be held liable under § 1983.

In addition, the undersigned also suggests that plaintiff fails to establish that Corizon acted pursuant to an unconstitutional policy, procedure or custom. Plaintiff's allegations are conclusory and fail to assert the existence of an affirmative custom or policy by Corizon.  Plaintiff merely argues that Corizon has a generic protocol that is severely flawed in an effort to save money for financial

24

gain at the expense of prisoner health.  However, plaintiff is required to establish

facts raising a plausible inference that Corizon was on notice of a need to adopt

new policies, because of a clear and persistent pattern of previous unconstitutional

behavior by Corizon employees.  *See Hamer*, 2013 WL 8479414, at *7 ("The

allegations of the complaint, taken as true, do not raise a plausible inference that

Corizon was on actual or constructive notice of a persistent pattern of

unconstitutional behavior by one of its licensed employees, such that Corizon

should have adopted better policies or more training to prevent similar

occurrences.  In the absence of these crucial allegations, the complaint fails to

state a claim upon which relief can be granted under 42 U.S.C. § 1983 against

Corizon.").  Accordingly, plaintiff's first amended complaint fails to state a claim

against Corizon because he failed to demonstrate that anyone was deliberately

indifferent to his medical needs in reliance on any specific custom or procedure.

### C.   Claims against Defendant Smith

Here, the same ruling on plaintiff's Eighth Amendment claims as to the

medical care defendants and Corizon applies equally to defendant Smith.  Plaintiff

asserts that he complained to defendant Smith, the Warden, about the lack of

adequate medical care and requested a transfer and Smith did not do anything.

First, as explained above, plaintiff fails to establish a genuine issue of material fact

that the medical care defendants and Corizon acted with deliberate indifference to

his serious medical needs.  Rather, they provided medical treatment based on their exercise of professional medical judgment.  The Court's finding that plaintiff has failed to allege a constitutional violation by his medical treaters similarly defeats his claims against defendant Smith based on that same allegedly unconstitutional treatment.  *See Watkins*, 273 F.3d 682, 687 ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").  Second, a public official, such as defendant Smith, cannot be held liable under § 1983 unless plaintiff can demonstrate that the official is culpable because he was personally involved in the allegedly inadequate medical care provided to the plaintiff or that he otherwise encouraged or condoned others in providing such inadequate medical care.  *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Plaintiff offers no evidence that defendant Smith was personally involved in the allegedly inadequate medical care and thus his claim fails for that reason as well.  *Estate of Young v. Martin*, 70 Fed. Appx. 256, 261-62 (6th Cir. 2003) (plaintiff failed to state a constitutional claim against the warden because the warden did not administer medical care to plaintiff); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983).  Accordingly, the undersigned suggests that defendant Smith's motion for summary judgment be granted.

D.    Claims Against Unserved Defendants

The undersigned suggests that plaintiff's claims against the unserved defendants should likewise be dismissed *sua sponte*.  In addition to the Court's power to grant dismissal *sua sponte* provided by the PLRA and the *in forma pauperis* statute, it is well established that "[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related."  *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993).  "A court dismissing a plaintiff's claims against moving defendants may *sua sponte* dismiss non-moving defendants as well where 'it is clear that the same ruling would inevitably apply to each of the defendants.'" *Carter v. Michigan Dep't of Corrs.*, 2013 WL 5291567, at *16 (E.D. Mich. 2013), quoting *Rose v. Arkansas Valley Envtl. & Utility Auth.*, 562 F.Supp. 1180, 1189 n. 11 (W.D. Mo. 1983).  Based on a review of plaintiff's complaint, the claims for inadequate medical care against the unserved should be dismissed for the same reasons as the moving defendants.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants motions for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

28

Date: December 23, 2014                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on December 23, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): Harold Varner, #423918, Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov